Nacy or Nassie? Nacy, your honor. Judge Loca, may it please the court, Pete Nacy appearing under the court's inherent power appointment for Mr. Thomas. This is a case where we have an inmate who's going to be in prison. It would help if you spoke up a little bit. Certainly. This is a case where an inmate is going to be serving the rest of his life in prison and the way it's been going it looks like he's going to be doing that while being medicated with medications that we don't know about. Of course the prison I'm sure does. But the case got to this court by way of summary judgment on the matter of two legal doctrines. The Heck v. Humphrey case and the Rooker-Feldman doctrine. It got that way because the magistrate judge to whom this case was referred denied a discovery request when the motion was filed. Now the case by then was maybe a year old. It was filed in April of 2016. The court recruited volunteer counsel to help him and filed an amended complaint about six or seven months later. Within two months the motion for summary judgment was filed. Well what did you need discovery for if they were going to dismiss for jurisdictional in the case of Rooker-Feldman or sort of quasi-jurisdictional in the case of Heck? Well the facts that Mr. Thomas alleged indicate that this medication is an ongoing condition of his, I don't know if it's called treatment or if it's called something else. Very little notes are in the file regarding whether this is treatment or just warehousing. He called it warehousing. Well and that breaks up an interesting point I want to see if you agree. The way I read this and I think it's helpful to frame this case. I spent a fair bit of time thinking about it. There are sort of three discrete aspects of your claim or three claims however you want to put it. There's challenges to the initial civil commitment. There are challenges to the continuing civil commitment. Whether you should be continuing to be civilly committed. And there's the third claim which you just referenced which is the forced medication. Do you kind of agree that those are the, I don't know if you call them claims, but aspects of your claim? Well they are in one respect your honor. The way I read it though the commitment itself, getting to that point, we're past that point. He's being committed and no legal doctrines could be a bar to a determination whether the initial commitment was warranted. The ongoing part of it is a different consideration and it ties into the third consideration. Well I'm still not sure that those are separate. If you're not challenging the initial commitment, I agree. I don't think it's a Rooker-Feldman issue. I actually think it's a Heck versus Humphrey issue. But on the continuing commitment and I want to get to, don't get me wrong, I want to get to the forced medication as well. But if you're talking about the continuing commitment, I think that's still a Heck issue. Because the fact of the matter is your remedy is a habeas corpus petition. So that's number one in Heck. Then number two, you analogize it to a state court or state tort claim. And there are two torts that are possible here. A malicious prosecution, which has been extended to civil cases in Iowa, or false imprisonment. Either one of them, you have to sort of challenge the underlying decision to continue to commit him. And so it seems to me that that is a Heck versus Humphrey. The third issue, completely independent, probably not barred. I think that's the third issue is how I have looked at this case. Because the reasons for the commitment could be completely independent of why the treatment that's the fallout from the commitment. As I pointed out in my reply brief, the treatment could run the gamut of anything. I mean, the guy has these diagnoses of severe depression, and then these two other diagnoses of explosive disorder, and the other. I can't remember what the other one is. But we don't have anything in the record to indicate what kind of treatment can address those things without the forced medication issue. It seems like the first response is the easiest response. Seems to me, though, the answer is it's not completely barred as to forced meds. To the extent the Iowa Court of Appeals either had a Harper-type issue before it, or its ruling combined with the commitment process satisfied the Harper requirements, then as of the date of the second Iowa Court of Appeals decision, the forced meds claim is barred. But I don't understand why it would be barred for any period after that. Have I got it wrong? No, I'm in complete agreement with it. I think that... So, but your brief and your reply brief, I thought, clarified that you want to attack the Iowa Court of Appeals on decision on the forced meds. That, it seems to me, and I don't care if... I'm not inclined to apply Rooker-Feldman these days, but it seems to me some type of preclusion is going to bar that, or I don't see any reversible error in district court so ruling. Well, I reviewed those two appellate court decisions, and my recollection is that they didn't squarely address the forced medication issue. They don't have to squarely address it. If they were approving a process in which the medication was a part of what they were approving, if it wasn't challenged, well, I mean, claim preclusion precludes things which could have been challenged as well as things that were challenged. That's a tough bar for me to meet, Your Honor. Yeah, that's why it seems to me you've got a steep hill to climb up to the date of the second Iowa Court of Appeals decision, and I haven't studied... I mean, you want to attack, you want to say there was nothing in the record that would permit the Iowa Court of Appeals to validly approve a medication program, but preclusion does more than that. Well, Your Honor, I thought I had made the argument that the district court didn't have anything in the record. The appellate courts may have had something in the record, but we don't see anything in this record. But preclusion doesn't require a study of what was argued and how was it argued, and did the court do it right, the state court? And if there's preclusion, the federal district court doesn't have to look behind the precluding decision. I would agree with that. So then that leads us back to the forced medication, ongoing. Ongoing. That I don't understand why... I don't understand how the district court came to preclude that or bar that. Well, I may be opposing counsel will tell me how it was argued that the district court could... Because as I understand the pleadings, it was up to the day... He was making the allegations as of up to the date that the court ruled. Right. Yeah. So at that point, he had had some number of months or maybe a year or two since the latest court order, unless there's a court order I'm not aware of. Well, and beyond the record, I went to visit Mr. Thomas at the prison last March, I think it was. And I mean, it's not surprising to hear that medication continues. In the record... And the motive... Frankly, the motive doesn't matter. As I understand what Harper teaches us, it's the process and the approval authority that matters. Well, but it also requires that whatever the medication is being used for, that it be in his medical interest. Now... Well, yeah, but the district court doesn't... Harper versus Washington... I mean, Washington versus Harper says that specifically. Now, tying into that is these periodic reports that... And I would direct the court's attention to page 40 of the appendix. Why hasn't your client gone back to the state courts? He probably will, Your Honor. I don't know if he has yet, but certainly that he and I talked about doing that to get that squared away down there so that the federal courts don't have to spend time on it. And the federal courts are to be applauded for spending as much time on it as they have. But on page 40, the statute under which he was committed, you check one of three boxes. And the third box says he is seriously mentally impaired and in need of full-time custody and they claim to be treating him. What are you reading from? Page 40 of the appendix. It's one of those periodic reports of his civil... Before or after the state court rulings? This one was... I think before. Yeah, it was March of 2015. All right. So if it wasn't before the state court, it should have been. Yeah, well... If it was before the state court, then they obviously considered or had the capacity to consider what you're saying about it. Right. And this particular part of the record is the first indication. There are subsequent reports that say the same thing. And the statute itself hasn't changed any. Anyway, what it does is it contemplates custody and care. Now, we have an inmate in the custody of the Department of Corrections, doesn't appear he's being cared for or treated other than keeping him quiet. That's not a Harper argument. That's not a federal issue. Well, it is, Your Honor, because it's not in his medical interest to be kept quiet and manageable. It's not in his medical interest for that. He's got these underlying conditions that require... I don't think you can say that. It sounds good, but I don't think it's categorically true. It can certainly be in his best interest to be quiet and manageable in a yard full of violent inmates. Sure. And I think that's one component that the prison has to take into consideration. They have to keep order in the facility, and they have to make sure that they're secure. This is all state law stuff. I mean, I have every confidence that the Iowa Code and the Iowa courts can distinguish between the proper custodial treatment of inmates and the medical treatment of inmates, and apply the statutes that differentiate between the two and decide whether your client is being properly housed. The medical component that you just said is missing in the statutory consideration. It's also missing in the record as well. Well, they apply Harper too. Presumably so, but evidently the legislature is not. You have this choice to check, and this is the only box that's checked, which doesn't contemplate medical interests of the inmates. Counsel, let's presume that forcible medication implicates the liberty interest. There's a section 1983 claim here. I'll just presume for that for a second. And then I guess my question then becomes on the continuing medication claim, I don't see any medical evidence raising an issue here. In other words, and this isn't a discovery issue, this is affirmative evidence that you've got to come forward with at summary judgment and say, look, actually, medicine X that he's taking is not used for whatever mental condition he has and should not be used on this particular patient. I don't see any of that. I see the arguments you're making here. What evidence do you have, and where is it in the record? Well, there's no evidence of that. Other than Mr. Thomas said, I don't need it, and it's that sort of thing. That's where the discovery order, or denial of the discovery order under the summary judgment rule, if it had been granted, that could have been figured out in discovery. But you don't need discovery to figure out what the state thinks the reason is. You need to come up with evidence that shows why you think it was improper, at least to survive summary judgment, because what they think it is isn't going to prove your case. No, of course not. But I think, let's say Mr. Thomas decided to enlist the assistance of a medical doctor to give an opinion. Sure. That could be added to the record, and that could very well lead to a denial of summary judgment on the issue. But you didn't need a discovery order to get that. I mean, I realize he's incarcerated, but his lawyer could have obtained that on his own. Well, I think the way Rule 56 is designed, though, if upon resisting a summary judgment, you think more additional discovery is required, which that could be, then you ask the district court to hold the proceedings in advance while you get that figured out. And with the ongoing treatment, I mean, it's ongoing. Things change as we get older. Mr. Thomas is under the age of 45, certainly, and so things change. He may not need the medication. Maybe his treatment, maybe if psychoanalysis, I mean, there's all kinds of things that could be taken into consideration regarding his treatment. You mean there's a serious exhaustion problem here? Yeah, Your Honor. You mean exhaustive of administrative remedies? State remedies of some kind. Right. I'd like to reserve the remaining time for rebuttal. May it please the court. My name is William Hill and I represent the Iowa prison officials in this particular case. This case presents the issue of whether a civilly committed Iowa offender can bring an action for damages under 42 U.S.C. section 1983 for allegations related to his civil commitment. The trial court granted the Iowa prison... You know, that hasn't... We've gone beyond that in the oral argument. Right. And let's talk about what... Do we have a court order after the second Iowa Court of Appeals in addressing the question of his ongoing medication? I don't believe we do. But I think the issue in really what the court is asking is could the like the medication be raised in the course of his ongoing periodic reviews? And I think the answer is yes. And I think the Iowa Court of Appeals... So now we have an exhaustion problem. And you raised all the wrong defenses in the district court, it seems to me, as to this forced medication. I understand the pleadings make it appear that he's attacking the commitment. Right. Right. But you addressed only the commitment by the defenses raised. Right. Because I think that's what I thought the issue was... And the district court took that good defense to the first part of the case and threw the whole case out. That seems to me is a problem for us. I understand the issue because I think with regards to the initial civil commitment, I think we're fine that that's not being challenged. In terms of the continuing ongoing civil commitments, I think we have the periodic reviews. And that's where the exhaustion issue really comes in, the preclusion, the heck issue. Did you ever answer here? Excuse me? Did you answer the complaint? Yes. Did you plead exhaust, failure to exhaust? I raised qualified immunity. And then I raised these on summary judgment, the issue of Heck versus Humphrey of no jurisdiction. Rooker-Feldman, right? Yeah. Rooker was picked up by the district court and said, well... To the extent there's a Harper due process claim, is there an exhaustion issue? And if so, was it pleaded? And I think what the... No, it was not pled. I did not raise an affirmative defense of Heck claim, no jurisdiction. And so if there's no jurisdiction, if the claim hasn't yet arisen, exhaustion hasn't become an issue. Well, but on the Heck issue, this is the continuing confinement or the continuing conditions of confinement, which is what this is, the enforced medication. That is not something you bring in a habeas petition. So Heck on its face really doesn't apply. This is something you'd have to deal with some other way by exhaustion, as Judge Loken recommends, or something else. But it doesn't seem to me that Rooker-Feldman or Heck really apply to that one. And I think the exhaustion, if we go down that road, the exhaustion is what he does via the periodic reports. And I think that's what we see kind of the underlying issue, the forced medication. In the very first, the 2015 Iowa Court of Appeals case, they looked at the issue of he did not like the medication. He wanted a different medication. He indicated he wanted a dexedrine. And the powers that be, the doctor said, no, that's not a good medication for you. So the argument of the prison officials is that, yes, if you consider it as the exhaustion issue, the issues with regards to forced medication are something that can be raised in the periodic reviews as a part of the process. All of that's true, but I wonder if there's just an easier way out of this, which is on summary judgment, we're reviewing this de novo. And what I'm not seeing anywhere is any evidence from the plaintiff here that there's any problem with the forced medication. You can't simply allege, I'd like to have a different medication and bring a Section 1983 claim and survive summary judgment. You've got to come up with some evidence that shows it's inappropriate for your particular condition. And I guess what's your client's position on that? Yes, he would have to bring that evidence. He can't allege more. And if you take it, if this is an 83 case, he's obviously proceeding as a deliberate indifference to a serious medical need. It's a sophisticated condition. He's going to have to come forward with expert psychiatric testimony that says the Iowa doctors missed the boat. They misprescribed it. They're giving him medication A. He should be on medication B. This is so obvious that this is something that the general public would recognize to satisfy the deliberate indifference to a serious medical need. Well, and then his response would be, discovery. I didn't get discovery, so how was I supposed to prove that? And the response would be that, yes, you do have that option to bring it in the periodic reviews. I was going to ask the same question. Oh, sorry. How is he supposed to make his case if he's denied discovery, if he doesn't even know what medicines are being given to him? And I think beyond that, he says, I am being medicated for the guard's convenience. I am not being medicated because of my medical condition. And I'm now in general population, so the civil commitment is in name only. I'm really an inmate. He doesn't need all kinds of medical experts to put that issue before a federal or a state court. I think if you're looking at the motive in terms of why they're giving- He's looking at the motive. That's his evidence. And I say the motive is justified by the civil commitment itself. The motive doesn't have to- He's been released into the general prison population. Right. You can say, what's the evidence that this is still a valid civil commitment when he's in the general population? I think the evidence that it's still a valid civil commitment is because what happens with individuals, they bring them back into the realm of the psychiatric hospital, get them stabilized, saying, okay, we can see that you can manage it on your own. We're going to assign you as a- It's just like we can put you in a mental health- Do you have documents in the record? Or are you just explaining, and I'm sure you've got- Yeah, that's the realm of what- It's an alternate- You know, that doesn't fly if there's a basis that what's happening is not consistent with what's supposed to be happening. I can't put any better than that. Counsel, would you agree there's nothing in the record or in the commitment order showing what treatment was ordered or what medications are medically necessary? Correct. I think that because it's on the review of the- You know, we're not trying the case. I'm using the result of the commitment order, the periodic reports. And so I'm saying the decision's been made. If we're looking- And that's forever. No, I think it's the periodic reports. I think- Well, the district court said it's forever. Dismissed with prejudice, right? Well, but what Mr. Thomas's options are, he could go back to state district court, to the hospitalization referee, and say, hey, my condition is now better. I shouldn't be on this medication. And then present that argument, and either it's up or down. And that's his forum to challenge it. He can't have another opportunity, and this gets back to the heck, to say, well, I'm a state- You know, if you're considered a Rook or Feldman or a Heck, you can't somehow convert a valid judgment into an 83 claim. If his motive allegations are true, and there is no legitimate medication orders that the guards can fall back on, he may have a damage claim. He may very well have a damage claim, but that's something he can establish with the judicial hospital referee first. No, no, no. He doesn't have to exhaust that. Are you saying that because he's civilly committed, he can still claim on top of that, that the doctors or the staff have been deliberately indifferent? I don't think this record establishes that after he's released to the general population, he's civilly committed. I doubt that you can tell me or point me to a statute that would make that clear. It's a matter of law. I think it can. In Iowa, there's an alternate placement statute in a line of cases that say, if you're civilly committed, we don't necessarily have to keep you in the hospital. We can put you in a different wing as long as you function. And so I think that's- Well, that's fine. But in the federal system, on the competency question, you're put into custody until you're competent to defend yourself, and then you're no longer in that commitment process. And in Iowa, there's no certainty as to what the status is. And in Iowa, it's a little bit- And you short-circuited the evidence. You said Rooker Feldman, no evidence needed. Right, right. That's because he's a state court loser, essentially complaining about the civil commitment decision in the periodic reports. Isn't that only applicable if you're basically invalidating his civil commitment? Wouldn't you agree that the civil commitment validity is different than his proper medical treatment? I think they're, in essence, they're one and the same. Because once the court determines, the court determines he needs medical mental health treatment. As a part of that determination, the Iowa courts will look at the level of treatment given, and Mr. Thomas will be given an opportunity in those periodic reports, in the civil commitment, to challenge, hey, I don't need drug therapy, I need music therapy. That can't be the rule. Because suppose, I'm not suggesting that this has happened here, but suppose they gave him a cocktail of 55 pills a day, and it made him practically comatose, okay? And you're going to rely on the civil commitment order to say he can't challenge that except for periodically through a civil commitment? Yeah, he can challenge it through the So he has to wait a year, or wait a year and a half, and to challenge that and be comatose for a year. I think he could challenge it at any time under the Iowa statute to say, hey, look, they're improperly civilly medicating me, I don't like this medication. And I think that's what he did. I think he can charge that one in federal court. What's that? He can charge that one under Harper at any time. I'm not sure what exhaustion is required when you have, if you have this situation where you are in custody as an inmate, and you allege and have a prima facie case that they're forced medicating you not for medical reasons. And then you're getting into the, if you're questioning the motive, I think the motive has to go into the, because that's part of the civil commitment order and the determination. No, past the civil commitment order. What's that? We're past the last judicial approval of the civil commitment. Correct. And so I think he goes back in, or there's obviously been subsequent activity as to the periodic reviews, and either he needs medications or he doesn't. If he doesn't need the medication, he can present that claim during the process of the periodic reports. But until then, he doesn't have a claim. Counsel, why is he precluded from asserting his constitutional rights? I don't think he is. He's given his constitutional right. His constitutional right was at the civil commitment hearing. And during the civil commitment hearing, he was allowed to satisfy the different processes. Iowa statute is constitutional. I will follow the rules with respect. But he's not challenging, at least in the medical treatment claim, the validity of his civil commitment. He's challenging his medical treatment. And I think you can challenge your treatment as a part of the periodic review. Otherwise, this court will start sitting in review of every state court determination. All right. Now, you've paraded the horribles, and let's suppose you've been unsuccessful. And the only thing we agree with is that the initial commitment order and any ongoing approval of a commitment was properly dismissed. Right. But everything else you've argued, we reject. What would you suggest we do with this appeal? I would suggest that you affirm it, because a- We can't affirm it. Okay. We just said, all of your argument, hypothetically, we've rejected all your arguments except that the commitment order is valid and unimpeachable in federal court. Now, what do we do with this case, do you think? If the court made the determination that the only thing valid is that order- There's no judicial commitment since the last Iowa court 2016. And there's no ruling with regard to forced medication since that time. And therefore, the district court shouldn't have dismissed the whole thing with prejudice. Now, what do we do? Then it goes back to the federal district court to say, well, we're not sure what state court proceedings are, kind of like an exhaustion of post-conviction relief remedies. No, we're past that. There aren't any judicial proceedings. But what I'm saying is there could have been additional proceedings between then and now, which could have clarified what went on with Mr. Thomas since our last review. Is there anything pending in the Iowa courts? I do not know. I do not know his current status. I'm concerned about his claim for damages for what's happened. And I would assert that the claims are barred because of heck, because that decision- I think they're unlikely to be successful, but I don't think they're barred. Okay. I'll agree to disagree at this point because I think the issue is his civil commitment is out there. He didn't reverse or invalidate the civil commitment to claim damages for what happened to him. And I think as to what may have happened to him in the future is a claim that he can challenge through the periodic review process under Iowa law. Leaving aside the periodic reports, my question is, to what extent does the commitment order, including the judicial approval of the commitment order, address the question of medications? Where do I look? It says to treat him. And I think the judicial referee can't say treat him with medication A, B, or C. The treatment order is to treat him to solve the condition. But we have guards treating him. Where's the evidence that doctors are treating him? I don't think there's been a claim that somehow the officers were giving the medication. I thought that is the claim. No, I think the- They're making him sleep all the time because he's a more convenient inmate. No, I think the claim is- That's specifically what he claims. That the medication makes him do that.  So that's the claim of the state. I understand this is a contentious issue and a neat issue, and we would request that the decision of the district court be- I want to ask you one more question because I think you're putting too much weight on the periodic review. I asked the question about the 55 pills. Suppose that you're relying on this treatment and they give him electric shock therapy and a lobotomy, and he wants to challenge those things. Does he have to wait for the periodic review? That's treatment. Right. Right. I just don't see how that works. To me, the example that I was going to use was when there's an arrest of an individual. You have two aspects of that issue, whether or not they committed the crime and if the police used excessive force. I think those two can be partitioned off and examined independently. What I'm saying is in the civil commitment, the treatment, when the doctor is ordered to treat, to solve the conditions because this guy's a harm to himself or others, I think those two are still so intertwined with the whole concept that he doesn't have an opportunity to do that unless it's through the hospitalization procedures. Thank you. Thank you. Your Honor, I only had a few more seconds of rebuttal. I'm prepared to rest unless the court has further questions. All right. I think the case has been well explored and well briefed, and we'll take it under advisement. Thank you, Your Honors. Please call the next case. EMT Insurance Company.